### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY RAYNOR SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. CIV-08-1203-D |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

### O R D E R

Before the Court is the amended motion of Defendant BNSF Railway Company ("BNSF") to exclude the testimony of Plaintiff's expert witness, Stephen Morrissey, Ph.D.[1] [Doc. No. 85], and its separate motion to exclude the expert testimony of Richard Thomas, M.D. [Doc. No. 40]. In each motion, BNSF argues the expert opinion must be excluded pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Plaintiff timely responded to the motions, and BNSF filed replies.[2]

In its motions, BNSF asks the Court to conduct an evidentiary hearing on the admissibility of the expert testimony of Dr. Morrissey and Dr. Thomas. Although a hearing is a common method

---

[1] BNSF was granted leave to file an amended motion after it notified the Court that its original motion contained errors in the references to an exhibit. The amended motion supersedes and replaces the original motion.

[2] The parties have filed additional *Daubert* motions, which will be addressed in subsequent orders. However, BNSF's separate summary judgment motion contains extensive argument regarding the opinions of both Dr. Morrissey and Dr. Thomas. The parties also refer in their respective summary judgment briefs to the arguments and exhibits presented in connection with the *Daubert* motions regarding Dr. Morrissey and Dr. Thomas. Accordingly, the Court is addressing the motions regarding Dr. Morrissey and Dr. Thomas before considering the summary judgment motion.

for determining admissibility of expert testimony, a hearing is not specifically mandated. *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The Court has the discretion to determine if a hearing is required, and it need not conduct a hearing where the parties have submitted sufficient evidence to allow the Court to perform "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. *See also Burlington Northern and Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1031 (10th Cir. 2007); *Hynes v. Energy West, Inc.*, 211 F.3d 1193, 1203-04 (10th Cir. 2000).

The Court has carefully reviewed the parties' briefs and the exhibits submitted. Having done so, the Court concludes that the record contains sufficient evidence to rule on BNSF's motions regarding Drs. Morrissey and Thomas. The parties have not suggested there is additional evidence which would be pertinent to the issues raised by the *Daubert* motions; accordingly, the Court finds that an evidentiary hearing is not required.

Plaintiff's claims:

Plaintiff brings this action against BNSF, his former employer, pursuant to the Federal Employers Liability Act, 46 U. S. C. § 51 *et seq.* ("FELA") and the Locomotive Inspection Act, 49 U. S. C. § 20701 *et seq.* ("LIA"). "FELA and LIA are 'remedial and humanitarian' statutes that impose two separate types of liability to protect the safety of railroad employees." *Matson v. Burlington Northern Santa Fe R.R.*, 240 F. 3d 1233, 1235 (10th Cir. 2001) (quoting *King v. S. Pac. Transp. Co.*, 855 F. 2d 1485, 1488 n. 1 (10th Cir. 1988)). FELA "imposes liability on a railroad company when its negligence, or that of its employees or agents, results in injury to an employee." *Chaffin v. Union Pacific Railway Co.*, 192 F. App'x 739, 746 (10th Cir. 2006) (unpublished opinion) (citing 45 U. S. C. § 51). "LIA, on the other hand, imposes 'an absolute duty' on railroad carriers

to ensure that their locomotives are both properly maintained and safe to operate." *Matson*, 240 F. 3d at 1234 (quoting *King*, 855 F. 2d at 1488). LIA's purpose is to "protect railroad employees by imposing 'an absolute and continuing duty' to provide safe equipment." *Richardson v. Missouri Pacific R. Co.*, 186 F. 3d 1273, 1275 (10th Cir. 1999) (quoting *Urie v. Thompson*, 337 U. S. 163, 188 (1949)). "Because LIA does not create an independent cause of action, such a claim must be brought under FELA." *Matson*, 240 F. 3d at 1234.

A former railroad engineer, conductor, and brakeman/switchman, Plaintiff alleges he suffered work-related injuries during his employment and that the injuries were caused by the negligence of BNSF. He quit work on February 15, 2008, after having been employed by BNSF or its predecessor[3] for more than 37 years. According to Plaintiff, he did so because his treating physician advised that, if he continued work, diagnosed injuries to his cervical spine, lumbar spine and left shoulder could be exacerbated. Subsequent to leaving his employment, Plaintiff underwent three surgeries in 2008. He alleges the injuries he sustained, described as musculoskeletal disorders, resulted from hazardous working conditions and the requirements of his work as a railroad employee. He further alleges that BNSF was aware of the risks that its employees could develop musculoskeletal disorders and other injuries as a result of performing their job requirements, and that BNSF failed to take action to minimize those risks and/or provide a safe working environment.

To prevail on a FELA claim, Plaintiff must plead and prove "the common law elements of negligence, including duty, breach, foreseeability, and causation." *Gallick v. Baltimore & O. R.R. Co.*, 372 U.S. 108, 117 (1963). Under FELA, however, the employer's negligence "need not have

---

[3]It is not disputed that Plaintiff was initially employed by Frisco Railroad in 1970; subsequently, Frisco was acquired by, or merged with, Burlington Northern, and Plaintiff became an employee of BNSF.

been the sole cause of injury." *Chaffin v. Union Pacific R.R. Co.,* 192 F. App'x 739, 746 (10th Cir. 2006) (unpublished opinion) (citing *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). Instead, the issue is whether "employer negligence played *any part*, even the slightest, in producing the injury or death for which damages are sought." *Rogers*, 352 U.S. at 506 (emphasis added).

In this case, Plaintiff's evidence in support of his FELA and LIA claims consists in part of the proffered testimony of expert witnesses, including Dr. Morrissey and Dr. Thomas. BNSF challenges the admissibility of this evidence. Although it does not argue that either witness lacks the qualifications necessary to qualify as an expert witness, it contends that the opinion of each lacks sufficient reliability to render it admissible at trial.

Standards for admissibility of expert opinion:

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The Rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3)the witness has applied the principles and methods reliably to the facts of the case.

Pursuant to *Daubert,* the Court must initially determine the reliability and relevance of proffered expert testimony, thus serving as a "gatekeeper" with regard to the application of Rule 702. Although *Daubert* prescribes certain factors to apply in determining the reliability of scientific or technical expert testimony,[4] the Court has the discretion to determine the applicability

---

[4] According to *Daubert*, when evaluating the admissibility of technical or scientific expert testimony, the trial court should consider: 1) whether the theory or technique used by the expert can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error of the technique or method; and 4) whether the

4

of those factors where, as in this case, the testimony is not purely scientific. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The inquiry required is a flexible determination which does not necessarily mandate application of all factors announced in *Daubert*; those factors should be considered only to the extent they are relevant to the subject of the testimony. *Id.* at 149.

To satisfy the Court that the expert evidence is admissible, the proponent of the evidence "need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Goebel*, 346 F.3d at 991 (quoting *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir.1999)). Instead, the proponent "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements." *Id.*

Application:

Dr. Morrissey:

Dr. Morrissey is a Certified Professional Ergonomist and registered Professional Engineer; he has a bachelor's degree in Electrical Engineering, a master's degree in Psychology, and a Ph.D. in Industrial Engineering. *See Curriculum Vitae*, BNSF Ex. 5; Expert Report of Dr. Morrissey, BNSF Ex. 4, page 1 ("Morrissey Report). In brief summary, he is expected to testify about ergonomic risk factors associated with the performance of certain job duties, including those of railroad employees performing the duties required of Plaintiff, and the association between such factors and the development of musculoskeletal or cumulative trauma injuries or disorders. He will offer the opinion that Plaintiff's injuries were caused by cumulative trauma, including "whole body

---

theory or technique has obtained general acceptance within the scientific community. 509 U.S. at 593-94.

vibration," which resulted from the performance of his work duties. Dr. Morrissey will also offer an opinion that BNSF was aware of the ergonomic risks to which Plaintiff was exposed and that it failed to take appropriate action to provide a safe work environment.

Although BNSF does not suggest that Dr. Morrissey lacks the qualifications to render the opinions described in his report and deposition, it challenges the reliability of those opinions. BNSF cites the *Daubert* factors regarding the reliability determination for scientific evidence, and contends the opinion offered by Dr. Morrissey has not been tested or subjected to peer review, has not been evaluated for potential error, and has not been accepted in the relevant expert community.

As discussed, *supra*, however, the *Daubert* factors are not strictly applied in all cases; instead, the Court must evaluate the reliability of a proffered opinion according to the circumstances of each case. *See, e.g., Kumho,* 526 U.S. at 149. In this case, the opinions of Dr. Morrissey are based on his expertise as a Certified Professional Ergonomist and Professional Engineer; while the principles underlying the information discussed in his expert report arguably involve some scientific material, they are more properly characterized as based on engineering principles. However, even if the *Daubert* factors are applied, the Court does not find the report deficient on that basis.

Dr. Morrissey's 44-page expert report includes a detailed explanation of the study of ergonomic risks associated with certain working conditions, including those associated with jobs performed by railroad workers. Morrissey Report, BNSF Ex. 4. Contrary to BNSF's contention, the Morrissey Report cites numerous published studies in the United States and abroad which have analyzed the effect of ergonomic conditions on the body, including but not limited to the effect of vibration. *Id.* at pp. 4-22. In the report, Dr. Morrissey discusses specific ergonomic factors

associated with the types of musculoskeletal injuries Plaintiff claims to have suffered. *Id.* In each section of his report, Dr. Morrissey cites published studies dealing with a variety of occupations and physical activities associated with the performance of job responsibilities; again, he includes citations to studies performed in the United States and abroad, and summarizes the findings of those studies. In addition, Dr. Morrissey discusses in detail reports and studies which have analyzed the ergonomic risks associated with the performance of job duties by railroad employees, including the positions of brakeman/switchman, engineer, and conductor, all of which were performed by Plaintiff for BNSF. Morrissey Report, pp. 22-26. Dr. Morrissey also includes a discussion of studies, litigation, and related material involving the railroad industry in general and BNSF in particular. *Id.* at pp. 27-34.

The Morrissey report reflects that the subject of the physical effect of ergonomic conditions on employees has been widely studied, analyzed, and discussed in published studies. To suggest that the general conclusions of Dr. Morrissey have not been subject to scientific study or peer review is contrary to the evidence before the Court. Similarly, the application of these conditions to railroad employees is also supported by reference to published studies and analyses, and to suggest otherwise is also contrary to that evidence. In addition, Dr. Morrissey's opinion that the railroad industry is aware of risk factors associated with certain working conditions is documented by citation to published studies and reports; he also cites written materials in support of his opinion that BNSF had knowledge of the risks associated with the type of work performed by Plaintiff. The Court finds the opinion of Dr. Morrissey, as presented in his expert report, sufficient to satisfy the *Daubert* reliability factors, as adapted to the factual circumstances of this case.

However, BNSF's argument focuses primarily on the fact that, in his deposition, Dr.

Morrissey admitted he never observed Plaintiff perform his job duties, nor did he observe any other railroad employee who held similar duties to those performed by Plaintiff. He also admitted he had never worked for a railroad, and had not personally observed the performance of the duties of a brakeman/switchman, an engineer, or a conductor. BNSF argues this renders Dr. Morrissey's opinions unreliable because his description of Plaintiff's job duties is based only on what Plaintiff told him during two meetings.

The Court disagrees. As discussed above, Dr. Morrissey's expert report reflects that he relied on his knowledge and expertise as a certified ergonomist and engineer, and he reviewed numerous published reports and studies regarding the physical activities and requirements of railroad employees performing the jobs of brakeman/switchman, engineer, and conductor. Morrissey Report, pages 22-31. While Dr. Morrissey's application of these studies to Plaintiff's daily responsibilities is based on what Plaintiff told him about the performance of those duties, that he relied on Plaintiff's description does not render his opinion inadmissible. As Plaintiff suggests, Dr. Morrissey could not have observed Plaintiff performing his job duties because Plaintiff was no longer employed when he was interviewed by Dr. Morrissey. Although he could have observed other railroad employees performing the same duties, his failure to do so does not render his opinion inadmissible.

Where an expert witness offers testimony based upon incomplete information, his testimony is nevertheless admissible if the "inadequacies are known to the defendant in order to thoroughly cross-examine the witness." *Hertz Corporation v. Gaddis-Walker Electric., Inc.*, 1997 WL 606800, at *4 (10th Cir. Oct. 2, 1997) (unpublished opinion) (citing *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1482-83 (10th Cir. 1985)). Where the expert witness admits inadequacies or incomplete information, "the burden is on opposing counsel through cross-examination to explore

and expose any weaknesses in the underpinnings of the expert's opinion." *Robinson v. Missouri Pacific R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994).

An expert's opinion must be based on facts that enable him to "express a reasonably accurate conclusion as opposed to conjecture or speculation." *Beck's Office Furniture and Supplies, Inc. v. Haworth, Inc.*, 1996 WL 466673, at *7 (10th Cir. Aug. 16, 1996) (unpublished opinion). However, "absolute certainty is not required." *Id.* Thus, so long as the opinion is not purely speculative, it may be admitted; the jury must then decide the weight to be afforded the opinion. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U. S. at 596.

In this case, Dr. Morrissey's expert report and documentation contained therein reflect that, contrary to BNSF's contention, he did not rely solely on Plaintiff's representations to develop his opinion. His opinion is not based on conjecture or speculation, but is supported by published studies and analyses. Any deficiencies in the information on which he relied to describe the specific job duties performed by Plaintiff goes to the weight of Dr. Morrissey's opinion, not its admissibility.

Accordingly, the Court finds the expert opinion of Dr. Morrissey satisfies the reliability requirements of Rule 702 and *Daubert*. Having so concluded, the Court must determine that the proffered opinion is relevant in that it will assist the jury in determining facts at issue. *See, e.g., Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). BNSF does not challenge the relevance of Dr. Morrissey's opinion; furthermore, the elements required for both Plaintiff's FELA and LIA claims establish that the opinion is relevant to issues which must be determined by the jury with regard to injury and causation.

Having determined that Dr. Morrissey is qualified to offer an expert opinion, and that his opinion is reliable and relevant, the Court concludes that BNSF's amended motion to exclude Dr. Morrissey's expert testimony [Doc. No. 85] must be denied.

Dr. Thomas:

Dr. Thomas is an orthopedic surgeon who treated Plaintiff during the time period of 2006 through 2008 and performed surgery on Plaintiff's upper back and left shoulder in May of 2008. Dr. Thomas specializes in spine trauma and conditions of the spine. His testimony and medical records reflecting his treatment of Plaintiff include Dr. Thomas's opinion that Plaintiff had been exposed to total body vibration for an extended period of time. Although BNSF does not challenge Dr. Thomas's qualifications, it argues his opinion regarding total body vibration is inadmissible because it is not sufficiently reliable to be admitted pursuant to *Daubert*.

Dr. Thomas's records reflect that he first examined Plaintiff on November 15, 2006; during that examination, Plaintiff reported he had suffered pain and weakness in his left leg for approximately 10 weeks and that medication prescribed by his family physician did not relieve the symptoms. Plaintiff's response, Ex. 4. He told Dr. Thomas that he was employed as a locomotive engineer. After examining X-rays and an MRI and performing other tests, Dr. Thomas diagnosed Plaintiff as having a herniated nucleus pulposus, L4 and L5. *Id.*, at p. 2. In his deposition, Dr. Thomas explained that this is a herniated disc in the lumbar, or lower portion, of the spine. Plaintiff agreed to a conservative treatment consisting of steroid injection. Dr. Thomas concluded that, if the treatment was not successful, additional conservative treatments would be considered; however, he described Plaintiff as "a potential operative candidate." *Id.*

On December 19, 2007, Plaintiff was examined by Dr. Thomas again; on that visit, he

10

complained of cervical pain, left shoulder pain, and limited range of motion.  Plaintiff's Ex. 5. Although he had not suffered a specific injury, he told Dr. Thomas it was very difficult for him to perform his job as a train engineer because of his limited shoulder motion and pain.  Dr. Thomas reviewed an MRI of Plaintiff's cervical spine and concluded there was cervical degenerative disc disease with cervical stenosis and left upper extremity radiculitis, as well as adhesive capsulitis in the left shoulder. *Id.*  Dr. Thomas prescribed a steroid injection and physical therapy; he also noted that surgery might ultimately be necessary.

In February of 2008, Dr. Thomas again examined Plaintiff.  At that time, Dr. Thomas noted in his records for the first time that he believed Plaintiff had been "exposed to total body vibration for an extended period of time."  Plaintiff's Ex. 6.  He added, "I do believe this is the cause of his present condition."  *Id.*

BNSF argues Dr. Thomas's opinion that Plaintiff's condition resulted from total body vibration is not reliable because Dr. Thomas testified in his deposition that he did not conduct any tests to determine if total body vibration was the cause of Plaintiff's condition.  Dr. Thomas also admitted that he did not directly observe Plaintiff in the performance of his job duties, and he admitted he had no experience in the railroad industry.

However, Dr. Thomas testified in his deposition that his opinion, formed during his treatment of Plaintiff and approximately eight months prior to the filing of this lawsuit, was based on Plaintiff's explanation of his job duties.  Dr. Thomas also testified his opinion was based on his medical training and experience, as well as his review of literature regarding the effect of locomotive vibrations on individuals.  Thomas dep., BNSF Ex. 1, p. 31, lines 18-25; p. 32, lines 1-3; p. 38, lines 7-22; p. 77, lines 7-12.  He further testified that he has treated other individuals, including railroad

workers, and has diagnosed spinal injuries causally related to vibration exposure. *Id.*, at p. 32, lines 4-19; p. 33, lines 7-18. He also testified that he became familiar with the term "total body vibration" during his residency at the University of Oklahoma College of Medicine; he is also familiar with medical literature stating that certain occupational exposure contributes to the type of spinal conditions for which he treated Plaintiff. Thomas dep., p. 34, lines 5-12; p. 78, lines 8-12. Dr. Thomas testified that he performed a differential diagnosis of Plaintiff's condition; this was based on Plaintiff's description of his symptoms, the absence of other trauma that could cause his conditions, and on Dr. Thomas's understanding of the medical literature. *Id.,* p. 80, lines 1-24.

As Plaintiff argues, a treating physician may offer an opinion regarding causation so long as that opinion is limited to "observations based on personal knowledge, including the treatment of the party." *Davoll v. Webb*, 194 F. 3d 1116, 1138 (10th Cir. 1999). A treating physician may "state 'expert' facts to the jury in order to explain his testimony." *Id.* (citations omitted). An opinion based on the treating physician's examination of a patient and the patient's self-reported medical history has been held sufficient to support admission of the physician's opinion regarding causation. *See, e.g., Cooper v. Carl A. Nelson & Co.*, 211 F. 3d 1008, 1019-1021 (7th Cir. 2000).

That Dr. Thomas did not examine Plaintiff's working environment or question Plaintiff's description of his working conditions does not render unreliable his diagnosis and opinion regarding causation. As discussed, *supra,* the existence of inadequacies regarding the factual bases for an expert opinion go to the weight of the testimony rather than to its admissibility. *Daubert*, 509 U. S. at 596; *Robinson,* 16 F.3d at 1090.

Having reviewed the evidence in the record presented, the Court concludes that Dr. Thomas's opinions as a treating physician, including his opinion regarding the cause of Plaintiff's

condition, are admissible. The weight to be afforded his opinions is for the jury to decide, and BNSF is free to cross-examine him regarding the basis for those opinions.

In its reply brief, BNSF argues for the first time that Dr. Thomas's testimony must be excluded because he failed to submit an expert witness report, as required by Fed. R. Civ. P. 26(a)(2). Because this was raised in reply, Plaintiff has not had an opportunity to respond.

Even if the Court were to consider this contention timely asserted, however, the Tenth Circuit has held that a treating physician is not subject to the expert report requirements of Rule 26(a)(2), if his testimony is limited to offering an opinion based on his personal treatment of a patient. "A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Davoll v. Webb*, 194 F. 3d 1116, 1138 (10th Cir. 1999). A treating physician may, however, "state 'expert' facts to the jury in order to explain his testimony." *Id.* (citations omitted). With respect to the Rule 26(a)(2) expert report requirement, "it is apparent that the rulemakers did not think reports should be required in all cases and seemed concerned, for example, about the resources that might be diverted from patient care if treating physicians were required to issue expert reports as a precondition to testifying." *Watson v. United States*, 485 F. 3d 1100, 1107 (10th Cir. 2007). As the Circuit noted, the Advisory Committee Notes to Rule 26 provide in pertinent part:

> The requirement of a written report in paragraph (2)(B), however, applies *only* to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. *A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.*

Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes (emphasis added). Citing that provision, the

Circuit noted the fact that a treating physician is not required to prepare an expert report does not prevent the opposing party from obtaining information regarding his opinion by utilizing discovery procedures such as document production requests and depositions. *Watson*, 485 F. 3d at 1108.

Furthermore, a treating physician may offer expert testimony in the form of an opinion regarding causation so long as that opinion is based on his experience and training and it is limited to his "personal care and treatment" of the patient at issue. *Parker v. Central Kansas Medical Center*, 57 F. App'x 401, 404 (10th Cir. 2003) (unpublished opinion) (citing *Weese v. Schukman*, 98 F. 3d 542, 550 (10th Cir. 1996)).

In this case, Dr. Thomas's opinion based on his care and treatment of Plaintiff may be offered without the necessity of submission of an expert report. Accordingly, his testimony will not be excluded on that basis. BNSF's motion to exclude his testimony pursuant to *Daubert* and, alternatively, pursuant to Rule 26 (a)(2), is DENIED.

Conclusion:

For the foregoing reasons, BNSF's amended motion to exclude the testimony of Dr. Stephen Morrissey [Doc. No. 85] is DENIED. Its motion to exclude the testimony of Dr. Richard Thomas [Doc. No. 40] is also DENIED.

IT IS SO ORDERED this 12th day of September, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE