**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BILLY RAYNOR SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CIV-08-1203-D |
| ) | |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Before the Court is the amended motion for summary judgment of Defendant BNSF Railway Company ("BNSF") [Doc. No. 84].[1] Plaintiff timely responded, and BNSF filed a reply.

Background:

Plaintiff brings this action pursuant to the Federal Employers Liability Act, 46 U. S. C. § 51, *et seq.* ("FELA"), and the Locomotive Inspection Act, 49 U. S. C. § 20701 ("LIA"). A former railroad engineer, conductor, and brakeman/switchman, Plaintiff alleges that, because of BNSF's negligence in failing to provide safe working conditions, he developed musculoskeletal disorders which necessitated surgeries and rendered him unable to continue working. He quit work on February 15, 2008, after having been employed by BNSF or its predecessor[2] for more than 37 years. According to Plaintiff, he did so because his physician advised that, if he continued work, the diagnosed injuries to his cervical spine, lumbar spine and left shoulder could be exacerbated.

---

[1] BNSF was granted leave to file the amended summary judgment motion after it advised the Court of errors in exhibit references in its original brief; the amended motion supersedes and corrects the original motion and brief, and the original motion need not be considered.

[2] It is not disputed that Plaintiff was initially employed by Frisco Railroad in 1970; subsequently, Frisco was acquired by, or merged with, Burlington Northern, and Plaintiff became an employee of BNSF.

Subsequent to leaving his employment Plaintiff underwent three surgeries in 2008.

Plaintiff alleges the injuries he sustained resulted from prolonged exposure to hazardous working conditions and from the physical requirements of his work as a railroad employee. He further alleges that BNSF was aware of the risks that its employees could develop musculoskeletal disorders and other injuries as a result of performing their job duties, and that BNSF failed to take action to minimize those risks and/or provide a safe working environment.

BNSF seeks judgment on Plaintiff's FELA and LIA claims, arguing the undisputed material facts establish that Plaintiff cannot satisfy the essential elements of those claims as a matter of law. Plaintiff contends disputed material facts preclude summary judgment.

Summary Judgment Standard:

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex,* 477 U.S. at 322.

In opposing a summary judgment motion, a plaintiff cannot rely on the allegations in his complaint, his personal beliefs, or conclusory assertions; rather, he must come forward with evidence

outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324. It is not the responsibility of the summary judgment movant to disprove the plaintiff's claim; the movant need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id. (citations omitted).* The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013 (1992)).

Evidence before the Court:

The record reflects it is not disputed that Plaintiff was employed by BNSF or its predecessor, Frisco Railroad Company ("Frisco"), for more than 37 years prior to leaving his employment in February of 2008. According to Plaintiff, he left work because of pain in his hips, legs and shoulder; his physician told him that continuing to work would worsen these conditions. After leaving his employment with BNSF, Plaintiff had shoulder surgery in May of 2008; in September of 2008, he had surgery on his cervical spine. A third surgery to repair a herniated disc in his lumbar spine was performed in October of 2008. Plaintiff does not contend that any of the conditions requiring surgery resulted from a specific incident during his work; instead, he alleges that continually performing the required duties of his work resulted in prolonged trauma causing musculoskeletal disorders.

It is not disputed that Plaintiff began work as a railroad employee in 1970, shortly after completing high school. He initially worked as a switchman/brakeman for Frisco, based in Quanah,

Texas. In 1973, he moved to Enid, Oklahoma, where he continued his employment for the railroad. In approximately 1992, he was promoted to conductor; in 1994 he became an engineer, and he held that position continuously until February 15, 2008. During his career, Plaintiff reported a few job-related injuries. In 1974 he cracked his wrist after falling from a moving boxcar. In 1987 he strained his mid-upper back, and was successfully treated by a chiropractor. He had two reported injuries in 1989, one as a result of foreign material in his eye, and a second resulting from being struck in the head by rocks. In 1990 he was treated for a bruised knee. In 1998, following a train collision, he was treated at an emergency room and released.

Plaintiff reported no additional work-related injuries. However, while on a family vacation in 2006, he experienced hip pain and weakness in his left leg. The record reflects there was no accident or incident in which he was injured. He returned to work, however, the pain and weakness continued. He was examined by Dr. Richard Thomas, a certified orthopedic surgeon, on November 15, 2006. He was diagnosed by Dr. Thomas with a herniated disc in his lower back; he was prescribed steroid injections. Plaintiff continued to perform his work as an engineer. In 2007, he began having neck and left shoulder pain; he also had some pain in his left arm and numbness in three fingers. After an MRI was performed, he was prescribed physical therapy and additional steroid injections. In December 2007, Plaintiff again sought treatment from Dr. Thomas, complaining of neck and left shoulder pain; he told Dr. Thomas that, because of the pain in his neck and left shoulder, it was very difficult for him to perform his duties as a railroad engineer. According to Plaintiff, the steroid injections and medication did not ease his discomfort. Dr. Thomas told him that his condition would not improve if he continued working, and it might become worse. Although Plaintiff returned to work, his condition did not improve and, in February of 2008, he decided to quit.

His last work day was February 15, 2008.

After leaving work, Plaintiff again sought treatment from Dr. Thomas. In a note reflecting a February 18, 2008 examination of Plaintiff, Dr. Thomas stated Plaintiff "has been exposed to total body vibration for an extended period of time," and added he believed "this is the cause of his present condition." BNSF Ex. 8. Dr. Thomas referred him to Dr. Scott Stubbs for evaluation of his shoulder and neck pain to determine if additional treatment would relieve the pain.

On May 6, 2008, Dr. Thomas performed surgery on Plaintiff's shoulder. On September 19, 2008, Dr. Stubbs performed surgery to repair a herniated cervical disc. On October 28, 2008, Dr. Thomas performed surgery to repair a herniated disc in the lumbar region of Plaintiff's back.

On November 10, 2008, Plaintiff filed this lawsuit, alleging that the injuries to his neck, back and shoulder were caused by working conditions in the performance of his job duties for BNSF and the subsequent surgeries were required because of those conditions. Plaintiff contends that, pursuant to FELA and LIA, BNSF is liable for the damages incurred by Plaintiff.

Application:

"FELA and LIA are 'remedial and humanitarian' statutes that impose two separate types of liability to protect the safety of railroad employees." *Matson v. Burlington Northern Santa Fe R.R.*, 240 F. 3d 1233, 1235 (10th Cir. 2001) (quoting *King v. S. Pac. Transp. Co.*, 855 F. 2d 1485, 1488 n. 1 (10th Cir. 1988)). FELA "imposes liability on a railroad company when its negligence, or that of its employees or agents, results in injury to an employee." *Chaffin v. Union Pacific Railway Co.*, 192 F. App'x 739, 746 (10th Cir. 2006) (unpublished opinion) (citing 45 U. S. C. § 51). "LIA, on the other hand, imposes 'an absolute duty' on railroad carriers to ensure that their locomotives are both properly maintained and safe to operate." *Matson*, 240 F.3d at 1234 (quoting *King*, 855 F. 2d at

1488). LIA's purpose is to "protect railroad employees by imposing 'an absolute and continuing duty' to provide safe equipment." *Richardson v. Missouri Pacific R. Co.*, 186 F. 3d 1273, 1275 (10th Cir. 1999) (quoting *Erie v. Thompson*, 337 U. S. 163, 188 (1949)). "Because LIA does not create an independent cause of action, such a claim must be brought under FELA." *Matson*, 240 F. 3d at 1234.

To prevail on his FELA claim, Plaintiff must plead and prove "the common law elements of negligence, including duty, breach, foreseeability, and causation." *Gallick v. Baltimore & O. R.R. Co.*, 372 U.S. 108, 117 (1963). Under FELA, however, the employer's negligence "need not have been the sole cause of injury." *Chaffin v. Union Pacific R.R. Co.,* 192 F. App'x 739, 746 (10th Cir. 2006) (unpublished opinion) (citing *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). Instead, a "relaxed" standard of causation applies; according to that standard, causation is established by proof that "'employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" *CSX Transp., Inc. v. McBride*, __ U.S. __, 2011 WL 2472795, at *5 (June 23, 2011) (quoting *Rogers*, 352 U.S. at 506).

The relaxed causation standard applicable to FELA claims also impacts the Court's analysis of a summary judgment motion based on causation; the standard applied by federal courts in determining whether the evidence is sufficient to send a case to the jury under the FELA is "significantly broader than the standard applied in common law negligence actions." *Metcalfe v. Atchison, Topeka and Santa Fe Railway Company*, 491 F.2d 892 (10th Cir.1973). The FELA causation standard "'is as broad as could be framed.'" *CSX Transp.*, __ U.S. at __; 2011 WL 2472795, at *5 (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542-43 (1994)). The test under the FELA as to whether or not a case should go to the jury is "simply whether the proofs justify with reason the conclusion that employer negligence played *any part*, even the slightest, in

6

producing the injury or death for which damages are sought." *Rogers,* 352 U.S. at 506 (emphasis added); *Standard v. Union Pacific R.R. Co.*, 34 F. App'x 629, 632 (10th Cir. 2002) (unpublished opinion); *Summers v. Missouri Pac. R.R. System,* 132 F. 3d 599, 607 (10th Cir. 1997). "It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes...." *Rogers,* 352 U.S. at 506. However, FELA "does not make the employer the insurer of the safety of his employees, the basis for recovery under the act is the employer's negligence." *Standard v. Union Pacific R.R. Co.,* 1999 WL 992973, at *3 (10th Cir. Nov. 2, 1999) (unpublished opinion) (citing *Ellis v. Union Pacific R. Co.,* 329 U.S. 649, 653 (1947)).

In this case, despite the relaxed causation standard, BNSF argues it is entitled to judgment because Plaintiff's causation evidence is insufficient. As BNSF argues, Plaintiff's causation evidence is based primarily on the expert opinion of Dr. Stephen Morrissey, a Certified Professional Ergonomist and registered Professional Engineer who holds a bachelor's degree in Electrical Engineering, a master's degree in Psychology, and a Ph.D. in Industrial Engineering. In his expert report, Dr. Morrissey opines that Plaintiff's back and neck disorders resulted in whole or in part from total body vibration and related ergonomic risks associated with the work Plaintiff performed for BNSF. Dr. Morrissey's report is submitted as BNSF Ex. 5. Dr. Morrissey also concludes that, based on numerous published studies and other materials cited in his report, both the railroad industry in general and BNSF in particular were aware of these risks. In addition to Dr. Morrissey's opinion, Plaintiff relies on the opinion of his treating surgeon, Dr. Thomas, who stated in his medical records that Plaintiff's condition was caused by total body vibration.

BNSF argues that these opinions are insufficient to create a material fact dispute on the issue of causation. In support of that argument, BNSF reiterates the arguments presented in support of its

motions seeking to exclude the testimony of Drs. Morrissey and Thomas under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). It those motions, BNSF argued that the opinions were insufficiently reliable to satisfy the requirements of *Daubert,* and it asked the Court to exclude the opinions at trial.

In a separate Order, the Court denied BNSF's *Daubert* motions, and held the opinion testimony of both Dr. Morrissey and Dr. Thomas is sufficiently reliable to be admitted at trial. Furthermore, the Court found that any perceived deficiencies in the factual bases for those opinions was a subject for cross-examination at trial by BNSF and/or its presentation of a contrary opinion through its own expert witness. The bases for the Court's denial of BNSF's motions to exclude the opinion testimony of Dr. Morrissey and Dr. Thomas is set forth in the separate Order; that discussion is adopted as though fully set forth herein.

Accordingly, to the extent BNSF seeks judgment on the FELA claim based on its contention that the opinions of Dr. Morrissey and Dr. Thomas are inadmissible, its motion must be denied. To the extent BNSF contends these opinions are inadequate as a matter of law to support causation, its motion must be denied because of the liberal standards of causation under FELA. Furthermore, as the Court determined in its Order addressing the *Daubert* motions regarding Dr. Morrissey and Dr. Thomas, any perceived factual deficiencies in their causation opinions goes to the weight of their testimony and not its admissibility; accordingly, such deficiencies may be presented by BNSF through cross-examination or the presentation of contradictory expert evidence at trial. Whether Plaintiff can prove the physical disorders he experienced were caused in part by the negligence of BNSF is a fact question to be decided by the jury. Because Plaintiff's witnesses have offered sufficient evidence to create a material factual dispute on the issue of causation, summary judgment

is improper, and BNSF's motion must be denied.

Conclusion:

For the foregoing reasons and those set forth in the Court's separate Order denying BNSF's *Daubert* motions, the motion for summary judgment [Doc. No. 84] of BNSF is DENIED. The action will proceed accordingly.

IT IS SO ORDERED this 12th day of September, 2011.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE